**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

MICHELE PIEPOLI,           :
                                :
        Plaintiff,        :    Civil Action File No.:
                                :
v.                        :
                                :    **JURY TRIAL DEMANDED**
PHARMACEUTICS        :
INTERNATIONAL, INC.,    :
                                :
        Defendant.    :

## COMPLAINT

COMES NOW Plaintiff, Michele Piepoli, by and through her undersigned counsel, and hereby files her Complaint, showing the Court as follows:

### Parties

1.    Plaintiff Michele Piepoli ("Plaintiff" or "Ms. Piepoli") is a 71-year-old woman and was at all times herein, a resident of Fulton County, Georgia.

2.    Ms. Piepoli is an "eligible employee" within the meaning of the FMLA in that she had been employed with Defendant for more than twelve months and worked more than 1,250 hours per year.

3.    Ms. Piepoli, at all relevant times to this action, was an individual with a disability within the meaning of the ADAAA, 42 U.S.C. § 12102(1).

4.    Ms. Piepoli was a person with a disability because she had an actual

physical impairment substantially limiting one or more major life activities, because she had a record of impairment, and because she was regarded as having an impairment.

5.     Defendant Pharmaceutics International, Inc. ("Defendant" or "Pii") is a Delaware corporation headquartered at 10819 Gilroy Road, Hunt Valley, Maryland 21030.

6.     Defendant is a covered employer under the ADAAA, as it employs more than fifteen people.

7.     Defendant is also a covered employer under the FMLA, as it had more than fifty employees within a seventy-five mile radius in each of twenty or more consecutive calendar weeks in the current or preceding year within the meaning of the FMLA, 29 U.S.C. § 2601 et seq.

8.     Defendant Pharmaceutics International, Inc. does not have a registered agent in Georgia. Pursuant to O.C.G.A. § 14-2-1510, Defendant Pii may be served with a summons and copy of the Complaint in this action by delivering process to its Chief Executive Officer, Kurt Nielsen, located at 10819 Gilroy Road, Hunt Valley, Maryland 21031. Defendant Pii may also be served with a summons and copy of the Complaint through its registered agent for service of process in the state of Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,

Wilmington, DE 19801.

## Jurisdiction and Venue

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over all Counts of this Complaint, which arise out of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq*. ("ADEA"), the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12112 *et seq.* ("ADAAA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").  Plaintiff asserts claims of discrimination and retaliation under the ADEA, ADAAA and the FMLA. Pursuant to the aforementioned statutes, Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory damages pursuant to the ADAAA, liquidated damages under the ADEA and FMLA, punitive damages under the ADAAA, attorneys' fees and costs of litigation.

10.     Venue is proper in this Court because a substantial part of the unlawful employment practices described herein occurred within the Atlanta Division of the Northern District of Georgia.

## Exhaustion of Administrative Remedies

11.     Ms. Piepoli has satisfied all administrative prerequisites to perfect her claims under the ADAAA. Specifically, Ms. Piepoli timely filed a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

12.     Ms. Piepoli brings this suit within ninety (90) days of receipt of her notice of right to sue.

## **Statement of Facts**

### *Plaintiff's Credentials, Hire, and Duties*

13.     Ms. Piepoli has worked in the pharmaceutical industry for over 45 years and managed her own consulting firm before Pharmaceutics International, Inc. ("Pii") recruited her to improve its operations.

14.     Ms. Piepoli began working as Vice President of Quality for Pii on February 1, 2017.

15.     In that role, she was responsible for the quality of every product that was manufactured. This work included adhering to FDA and European regulations, interacting with health authorities and inspectors, and overseeing quality control and quality assurance for all products prior to market release.

16.     She negotiated a salary of $310,000 per year, plus incentives, an equity stake, and other benefits. During the contract negotiations, Pii expressed its intent to hire Ms. Piepoli for a four-year term, which it also indicated in the contract by offering a 1% equity stake that would vest at a rate of .25% per year over the four

years she expected to work for Pii. The contract also provided for a severance payment in the event of her termination by Pii.

*Pii Interfered with and Retaliated Against Ms. Piepoli for Needing to Undergo Cancer Treatments*

17.    On June 29, 2018, Ms. Piepoli was admitted to North Fulton Hospital. Several days later, she was diagnosed with cancer, which constitutes a disability as defined by the ADAAA. She had surgery on July 3 and required daily infusion of antibiotics to address a severe pelvic infection. She was cleared to begin chemotherapy on August 17 and had a second surgery on September 28.

18.    Ms. Piepoli was on FMLA leave through mid-November, and Pii's CEO at the time, Dr. Abidi, told her not to worry about her leave dates and to focus instead on her recovery. During her FMLA leave, Ms. Piepoli was off Pii's payroll and was first on short term disability under a policy of insurance, then on long term disability. She offered to work remotely from her home in Fulton County throughout her treatment, seeking accommodation for her disability, but Mr. Sabone, the Vice President of Human Resources, encouraged her to stay off the payroll on disability so "headcount" could be reduced.

19.    Ms. Piepoli continued to receive chemotherapy but informed Pii she was able and willing to work remotely from her home in Fulton County, Georgia throughout her treatment. Her only limitation was attending periodic medical

appointments for maintenance therapy. Ms. Piepoli had remote access to her workstation and received business related emails which began decreasing around mid-July of 2018.

20.    Beginning in August 2018, Ms. Piepoli contacted Mike Bogda, Pii's COO at the time, to discuss a strategy for Ms. Piepoli to continue to manage her team remotely, but Mr. Bogda refused to engage her. Ms. Piepoli continued to reach out to Mr. Bogda by telephone and email up until November 2018 in an attempt to return to work. However, Mr. Bogda had instructed Ms. Piepoli's team to cease contact and communication with her.

21.    On or about January 1, 2019, while Ms. Piepoli was on leave, Pii hired Kurt Nielsen as its new CEO. Ms. Piepoli reached out to Mr. Nielsen several times by email and telephone in January and February of 2019 to discuss a reasonable accommodation for her disability that would allow her to return to work. After several attempts to reach him went unanswered, she finally spoke with him on February 28, 2019 and reiterated to him that she was ready to return to work.

### *Pii Terminated Ms. Piepoli Because of Her Age and Disability*

22.    Ms. Piepoli heard nothing from Mr. Nielsen for over a month after the February 28, 2019 phone call.

23.    In an April 18, 2019 email to Mr. Nielsen, Ms. Piepoli expressly stated

her desire to discuss "reengagement" with her team and schedule on-site meetings with her reports to discuss "the current state of compliance and quality organization status."

24.     With full knowledge that Pii intended to terminate Ms. Piepoli's employment due to her disability and age, Mr. Nielson refused to allow Ms. Piepoli to return to work and to meet with him in person. After months of avoiding Ms. Piepoli's requests to discuss her return to work, Mr. Nielsen finally agreed to speak with Ms. Piepoli by telephone on April 24, 2019.  During this conversation he told her that Pii wanted to "transition" her to a one-day-a-month "consulting role" and would pay her six-months' severance as required by her contract. Mr. Nielsen said that Ms. Piepoli could consult on retainer for $2,000 per month, rather than drawing her base salary of more than 10 times that amount.

25.     Through counsel, Ms. Piepoli contacted Pii on May 1, 2019, to understand her employment status and notified Pii that its refusal to reinstate her was in violation of federal law. In the middle of negotiations over how to resolve her employment situation, on June 27, 2019, her lawyer was informed that her employment had been terminated as part of a "reduction in force."  Pii did not contact Ms. Piepoli, and she received no official correspondence regarding her termination.

26.     Further, on or about July 1, 2019, Pii placed Ms. Piepoli on COBRA

without her knowledge or consent and did not inform her that she needed to enroll in COBRA until December of 2019.  Pii's mismanagement of Ms. Piepoli's health benefits impacted her ability to schedule critical immunotherapy appointments which put her life in jeopardy and caused her to incur additional out-of-pocket costs.

27.    Pii was aware of Ms. Piepoli's cancer diagnosis and treatment, but the company made no effort to engage in an interactive process with her to accommodate her return to work and, after several months, proposed only a "consulting" role with a substantial pay cut. When she opposed this decision, which she believed to be discrimination based on her age and disability, Pii included her in a list of employees to be laid off, despite its representations. Ms. Piepoli does not believe that she would have been included in the reduction in force but for her opposition to Pii's decision to transition her into a consulting role for lower pay.

28.    When Mr. Nielsen proposed demoting Ms. Piepoli on April 24, 2019, he made no mention of a company-wide restructuring or reduction in force. Nor did he offer her any alternative role in Quality Assurance or Quality Control. The reduction in force did not take place until June 27, 2019 – two months after Ms. Piepoli's final conversation with Mr. Nielson and ten months after Ms. Piepoli first proposed returning to work.

29.    All but 13 of the 63 members of the Quality Assurance and Quality

Control teams who were terminated as a result of the restructure were over the age of 40. Another employee in Quality Assurance who was battling cancer was terminated.

30.    On information and belief, the Pii employee now overseeing Quality is younger than Ms. Piepoli.

31.    Further, Ms. Piepoli's supervisors routinely made comments regarding Ms. Piepoli being the oldest member of her team and her being too old to live her lifestyle.

### *Plaintiff's Damages*

32.    Due to Plaintiff's termination, she has been unable to find work other than occasional consulting work.

33.    Ms. Piepoli was under a non-compete agreement with Pii, which she honored, and which prevented her from mitigating her damages.

34.    As a result of Defendant's conduct, Plaintiff's career has been derailed. She has and continues to suffer lost wages.

35.    Defendant's conduct has caused Plaintiff extraordinary emotional distress, emotional pain and suffering, inconvenience, humiliation and embarrassment.

36.    As a result of Defendant's conduct, Plaintiff has incurred attorneys'

fees and expenses.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

37.     Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

38.     Plaintiff is 71 years old and, at all relevant times, was an employee protected by the ADEA.

39.     At the time of her termination, Plaintiff was qualified for the position she held based on her record of performance and length of service.

40.     Pii harbored a discriminatory animus toward older employees which was evidenced by comments regarding Ms. Piepoli being the oldest member of her team and being too old to live the lifestyle she was living. and Pii executing its reduction in force with intent to disproportionately impact employees older than forty.

41.     Pii discriminated against Ms. Piepoli in violation of the ADEA by taking adverse actions against her, including but not limited to making ageist comments to or about her, interfering with her medical leave and treatment, and terminating her employment.

42.     In so doing, Defendant knowingly and intentionally discriminated against Plaintiff because of her age.

43.   In taking these adverse actions against Plaintiff, Defendant unlawfully discriminated against her based on her age in violation of the ADEA.

44.   Defendant willfully violated the ADEA in taking these actions against Plaintiff.

45.   Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADEA and all federal statutes providing remedies for violations of the ADEA.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA

46.   Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

47.   At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

48.   Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of the job with or without a reasonable accommodation.

49.   Pii discriminated against Plaintiff in violation of the ADAAA by taking adverse actions against her, including but not limited to terminating her employment because of her disability.

50.   In so doing, Defendant knowingly and intentionally discriminated against Plaintiff in violation of the ADAAA.

51.   In taking these adverse actions against Plaintiff, Defendant unlawfully discriminated against her based on her disability in violation of the ADAAA.

52.   As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, including healthcare, all in an amount to be established at trial.

53.   Plaintiff is entitled to an award of back pay and benefits, front pay, compensatory damages for emotional distress, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

54.   Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

55.   In taking these adverse actions against Plaintiff, Defendant unlawfully

discriminated against her based on her disability in violation of the ADAAA, 42 U.S.C. § 12112(b)(4).

## COUNT III
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA

56.    Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

57.    At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activities, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

58.    Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of the job with or without a reasonable accommodation.

59.    Plaintiff sought an accommodation under the ADAAA when, among other things, she notified Pii of her cancer diagnosis, her need for ongoing monthly treatment and attempted to contact decisionmakers at Pii regarding strategies for a return to work.

60.    Defendant unlawfully failed to accommodate Plaintiff's disability when, instead of allowing her to continue working and seeking treatment, it ignored

her requests to return to work with a modified schedule that would allow her to receive treatment and terminated her employment.

61.    By denying Plaintiff reasonable accommodations and instead terminating her employment, Defendant discriminated against Plaintiff because of her disability and violated her rights under the ADAAA, 42 U.S.C. § 12112(5)(A).

62.    Defendant's actions, in failing to accommodate Plaintiff's disability, constitute unlawful intentional failure to accommodate in violation of the ADAAA.

63.    As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits, including health insurance, humiliation, and other indignities compensable under the ADAAA, for which Defendant is liable.

64.    Defendant violated the ADAAA willfully, wantonly, and intentionally to harm Plaintiff and her federally protected rights. Additionally, and in the alternative, Defendant acted with reckless disregard for Plaintiff and her federally protected rights and she is therefore entitled to punitive damages.

<u>**COUNT IV**</u>
<u>**RETALIATION IN VIOLATION OF THE ADAAA**</u>

65.    Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

66.    At all relevant times, Plaintiff was an individual with a "disability" as

defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activity, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

67.    Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of the job with or without a reasonable accommodation.

68.    Plaintiff engaged in statutorily protected activity by, among other things, exercising or attempting to exercise or enjoy her rights under the ADAAA, including but not limited to, requesting a reasonable accommodation for her disabilities.

69.    Defendant unlawfully retaliated against Plaintiff, including, but not limited to, terminating her employment after she required periodic medical treatment for maintenance therapy.

70.    Defendant's actions, in subjecting Plaintiff to retaliation for engaging in protected activity by, among other things, seeking a reasonable accommodation for her disability, constitute unlawful intentional retaliation in violation of the ADAAA.

71.    Defendant's actions amount to violations of the ADAAA, which

prohibits employers from discriminating against an individual because she has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. § 12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

72.     As a result of Defendant's unlawful actions, Plaintiff has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial as well as emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities compensable under the ADAAA, for which Defendant is liable. Ms. Piepoli was under a non-compete agreement with the company, which she honored, and which prevented her from mitigating her damages.

73.     Defendant violated the ADAAA willfully, wantonly, and intentionally to harm Plaintiff and in violation of her federally protected rights.  Additionally, and in the alternative, Defendant acted with reckless disregard for Plaintiff and her federally protected rights, and she is therefore entitled to punitive damages.

16

## COUNT V
## INTERFERENCE IN VIOLATION OF FMLA

74.     Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

75.     Defendant is an employer covered by the FMLA pursuant to 29 U.S.C. § 2611(4)(A)(i).

76.     Plaintiff was an eligible employee under the FMLA pursuant to 29 U.S.C. § 2611(2).

77.     Following her first surgery on July 3, 2018, Plaintiff was entitled to leave under the FMLA pursuant to 29 U.S.C. § 2612(a)(1).

78.     On August 17, 2018, Ms. Piepoli began chemotherapy which required treatment about every three weeks to treat her cancer, which she was entitled to under the FMLA pursuant to 29 U.S.C. § 2612(a)(1), but Defendant engaged in prohibited conduct under the same by terminating her rather than allowing her to continue them.

79.     Defendant's prohibited conduct constitutes an unlawful interference against Plaintiff in violation of Plaintiff's rights under the FMLA pursuant to 29 U.S.C. § 2615(a).

80.     By terminating Plaintiff's employment when she was entitled to take leave under 29 U.S.C. § 2612(a)(1)(C) and § 2612(a)(1)(D), and by considering her desire to take use of protected leave as a "motivating factor" in the decision to

terminate her employment, among other actions, Defendant interfered with and prevented Plaintiff from exercising the rights provided to her under the FMLA.

81.     The actions of Defendant in interfering with Plaintiff's leave under the FMLA were willful and committed with reckless disregard for her right to take up to 12 work weeks of leave time or intermittent leave because of her serious health condition and in violation of 29 U.S.C. § 2612(a)(1)(C) and § 2612(a)(1)(D).

82.     The effect of the actions of Defendant has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits as a result of her right to leave under the FMLA. Accordingly, and because the violations of the FMLA committed by Defendant, Plaintiff is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617(a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

83.     Defendant acted purposely and with malice with intent to injure Plaintiff.

84.     Plaintiff also is entitled to liquidated damages for Defendants' willful violation of her rights under the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii).

85.     As a direct and proximate result of Defendant's actions and unlawful

interference with Plaintiff's FMLA rights, Plaintiff has suffered severe damages.

86.     Plaintiff's employment was terminated and Plaintiff has incurred, and will continue to incur, substantial economic damages.

87.     Plaintiff is entitled to recover all appropriate relief afforded under the FMLA.

**COUNT VI**
**RETALIATION IN VIOLATION OF FMLA**

88.     Plaintiff incorporates by reference all the preceding paragraphs of the Complaint.

89.     Defendant is an employer covered by the FMLA pursuant to 29 U.S.C. § 2611(4)(A)(i).

90.     Plaintiff was an eligible employee under the FMLA pursuant to 29 U.S.C. § 2611(2).

91.     Following her first surgery on July 3, 2018, Plaintiff was entitled to leave under the FMLA pursuant to 29 U.S.C. § 2612(a)(1).

92.     On August 17, 2018, Ms. Piepoli began chemotherapy which required treatment about every three weeks to treat her cancer which she was entitled to under the FMLA pursuant to 29 U.S.C. § 2612(a)(1), but Defendant engaged in prohibited conduct under the same by terminating her rather than allowing her to continue them.

93.     By terminating Plaintiff's employment when she was entitled to take

leave under 29 U.S.C. § 2612(a)(1)(C) and § 2612(a)(1)(D), and by considering her desire to take use of protected leave as a "motivating factor" in the decision to terminate her employment, among other actions, Defendant retaliated against Plaintiff because of her exercising the rights provided to her under the FMLA.

94.    The actions of Defendant in interfering with Plaintiff's leave under the FMLA were committed with reckless disregard for her right to take up to 12 work weeks of leave time because of her serious health condition and in violation of 29 U.S.C. § 2612(a)(1)(C) and § 2612(a)(1)(D).

95.    The effect of the actions of Defendant has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits as a result of her right to leave under the FMLA.   Accordingly, and because the violations of the FMLA committed by Defendant, Plaintiff is entitled to both equitable and monetary relief pursuant to 29 U.S.C. § 2617 (a)(1)(A) and (B), including, but not limited to, back pay and other lost economic benefits of employment, reinstatement or front pay in lieu of reinstatement, and reasonable attorney's fees and costs of litigation.

96.    Defendant's prohibited conduct constitutes an unlawful retaliation against Plaintiff in violation of Plaintiff's rights under the FMLA pursuant to 29 U.S.C. § 2615 (a).

97.     Defendant acted purposely, willfully, with malice and with intent to injure Plaintiff.   Plaintiff is also entitled to liquidated damages for the willful violation of her rights under the FMLA, 29 U.S.C. § 2671 (a)(1)(A)(iii).

98.     As a direct and proximate result of Defendant's actions and unlawful retaliation against Plaintiff, Plaintiff has suffered severe damages.

99.     Plaintiff's employment was terminated, and Plaintiff has incurred, and will incur, substantial economic damages.

100.   Plaintiff is entitled to recover all appropriate relief afforded under the FMLA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.     That this Court take jurisdiction of this matter;

B.     That process be served;

C.     That Plaintiff be awarded a declaratory judgment that Defendant violated the ADEA, the ADAAA, and the FMLA;

D.     That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADEA, the ADAAA, and the FMLA;

E.      That the Court award Plaintiff back pay and all benefits, privileges, and rights previously denied under the ADEA, the ADAAA, and the FMLA;

F.      That Plaintiff be reinstated to her former position with Defendant at the same pay rate, or in the alternative, front pay to compensate Plaintiff for lost future wages and benefits;

G.      That the Court award Plaintiff liquidated and/or double damages under the ADEA and FMLA for Defendant's willful violation of the law;

H.      That the Court award compensatory and punitive damages under the ADAAA in an amount to be determined by the trier of fact;

I.      That the Court award Plaintiff her costs in this action and reasonable attorneys' fees;

J.      That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

K.      That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 6th day of August, 2021.

BUCKLEY BEAL, LLP

*s/Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleybeal.com

22

Joseph Quattlebaum
Georgia Bar No. 319971
jquattlebaum@buckleybeal.com

600 Peachtree Street NE
Suite 3900
Atlanta, Georgia  30308
Telephone:  (404) 781-1100
Facsimile:   (404) 781-1101

*and*

PARKS, CHESIN & WALBERT, P.C.

John L. Mays
Georgia Bar No. 986574
jmays@pcwlawfirm.com

75 Fourteenth Street NE
Suite 2600
Atlanta, Georgia 30309
(404) 873-8000

*Attorneys for Plaintiff*